All right, our next case is number 23-10814, April Pipkins v. City of Hoover, Alabama, et al. Mr. Jacob. Thank you, Your Honor. Your Honors, may it please the Court, I'm Devin Jacob. I'm here on behalf of April Pipkins, who is the personal representative of the estate of her son, Emantic E.J. Bradford. The parents are here today, as a matter of fact. A very tragic case. This case results from a shooting that happened in the Galleria Mall a few years back. Officer David Alexander is the individual who shot and killed E.J., who was in his 20s at the time, on military leave, military train, and therefore knew how to use a weapon and do so safely. Good Samaritan in the mall, when a shooting happened. And the shooting happened, and he, as a good Samaritan, went to assist and unfortunately and tragically was shot and killed by Officer Alexander without any warning. A shot to the back of the head is what ultimately killed him. We're here mainly on a summary judgment issue, which is tied to the fact that there are disputes of fact. What dispute of fact? Reviewing the evidence in the light most favorable to you, that's what we have to do at summary judgment, and when viewing a qualified immunity defense, too. So tell me what issues of fact are in dispute. Plaintiffs submitted an expert report from a Nicholas Bloomfield, who is trained with respect to police practices and policies and procedures. The reasonable police standard, the reasonable law enforcement officer, is not a lay thing that you and I would generally know. Tell me if I'm wrong about this. My understanding is that Fourth Amendment reasonableness is a question of law. The expert can certainly testify with respect to the underlying facts that inform reasonableness, but he can't opine on reasonableness itself, right? You're correct. The problem here, though, is that when the court went to consider the evidence, the court did not consider any of the experts' opinion. What facts, though, I guess to Judge Jordan's question, what historical facts that might inform the reasonableness calculus are in dispute? Sure. How an officer is actually trained to respond in a situation of this nature. How an officer. That doesn't speak to. You could have had an officer. By the way, I'm not a fan. I've said it before. I'm not a fan of our qualified immunity jurisprudence.  But in this case, I'm not sure you even got a Fourth Amendment violation. I'll tell you why in a second. You could have a police officer who receives completely substandard training or no training at all, who uses deadly force in a reasonable way. And you could have the converse, a police officer who gets AAA training, everything a police officer could have hoped for, and yet uses deadly force in a constitutionally unreasonable way. I don't know how the training of this officer plays into whether or not the use of deadly force was constitutionally unreasonable. I think the court, Judge Dixon, he actually hit the nail on the head, which is exactly what reasonable is. What is objective reasonableness? You and I cannot explain the training and know how an officer would respond in a particular situation. For instance, in this situation, what should have happened, and the expert explained, is that when officers enter the area, they are repeatedly and immediately announcing themselves as police. So persons such as good Samaritans and off-duty police officers would know to immediately stop or at least have an opportunity to save their lives. But here, the court took it down to just the moment of the shooting, ignoring the fact that the way officers are trained because of the law that is built into their training, which is there needs to be a warning when it's feasible. That to me just sounds like, though, an argument that the district court got the law of reasonableness wrong, which is fine. I mean, that's a perfectly fine argument to make, but I don't think it's one about disputed facts. I could just be misunderstanding. So the expert that was put in was unrebutted. So the defendants had an opportunity to submit their own expert, had an opportunity to challenge their expert, but it's unrebutted. And it is evidence of record, and his opinions are tied to the actual evidence. The judge's descriptions of the events or interpretation of the events or how an officer is to enter that space was not tied to any evidence of record, of which, at summary judgment, the defendants haven't had an opportunity to submit. Here's the way I view the record evidence, and you tell me if there's something I'm not viewing in the light most favorable to you. They're at the Galleria Mall. It's Black Friday Eve. The mall is pretty full. Shots ring out. The police officers move toward the area where they think the shots came from. They see people sort of dispersing from a foot action store or around the foot action store. They see two men up against the wall, one of them holding his midsection or near that area, appears to be injured, unclear. And as they're moving toward those two individuals, Mr. Burrell crosses them with a gun, not pointed, but at his side in his hand, and he is headed toward the two men on the wall, too. Have I got anything wrong so far? So far, no, but there's... And as he passes them, right, and he is 10 feet away from the two men, deadly force is used, and he is unfortunately and tragically killed. Those facts are correct. And the police officers don't announce themselves and don't say, stop police. Now have I missed anything? Your Honor, yes. There's another piece of evidence which I think is critical, and that's the fact that the main witness is deceased here, and he didn't... Of course, he can't describe a whole lot. He can describe what he saw and what he was doing, but he's not here to tell us what he was doing. We have a video, but even the video is not subject to lay interpretation because, again, things, for instance, like the officer testified in a sworn affidavit that he saw him in a shooting stance, but then a deposition, in a sworn deposition, said he didn't see him in a shooting stance. But the video shows what is correct, which is he was not in a shooting stance. When the inferences are given to plaintiffs, you're correct. It shows that he's not. So we have to take that inference in your favor. I completely understand that.  Here's the problem from my perspective only. If those police officers in that sort of a situation hesitate for a second and he raises the gun and shoots, that's more tragedy. And then they're blamed for not doing something to stop a would-be gunman in a mall. And at that moment, they have no clue as to whether or not he is the shooter, whether he's a conspirator of the shooter, whether he is a would-be robber, or whether he is a good Samaritan. If any of the facts here were different, if your client's decedent were at another part of the mall and was not near the shots, if he was not running with a gun in his hand toward the two men on the wall, if he was not going toward the area where the shots were heard, I think the case is very, very different. But you don't have any of those differences. Your Honor, first of all, the evidence in our favor, he's not running, he's moving towards. The video shows he was, was he walking? The video shows, that's another issue. He goes by the officers. The video shows that at that moment that he's moving. They say briskly, but the security videos, they're not, there's a whole time lapse issue within how they're. But he goes by them. He is going towards them. But, again, the expert explained that to a trained officer, the bad guy usually is running away, not towards the individual, just like the shooter did. Not if murder or mayhem are on your mind. Unfortunately, we live in a society where shootings are becoming relatively commonplace, and not all shooters run away. Understood. But, Your Honor, you said it's more tragic. It's actually not more tragic. It's just as tragic. But here we have a situation where if the law was followed, if there was a warning provided, we wouldn't have had this. And if, in fact, there was a shooting that occurred and he did shoot somebody on the ground, then at least the police could say we followed the law. But here the officer even said there was time to give the warning. He conceded as much because at the deposition I sat there and yelled numerous warnings over and over and over again. And that was just taking into account the three to five seconds that he described. But, in reality, we would never have even had this situation had, when he entered the space, had he followed his training, as the expert explained, and was announcing himself as feasible. Because, again, training in the 11th Circuit is something that can be considered as far as the reasonableness. And the training, the expert explained, is built into the tactics. So had everything occurred the way they were trained and the way they were supposed to follow the law, they would have entered the mall, they would have heard the shooting, and immediately began to announce themselves. This is not the situation where it's 3 a.m. How long did everything take? Well, what the officer says from the second that… No, no. Forget what the officer said. From your perspective, facts and inferences drawn in the light most favorable to you, how long did everything take from the shots ringing out to the deadly force being used? I think it was something around five seconds or so. But what's important, Your Honor… I mean, you… What's important… One, two, three, four, five. I've yelled numerous… I could do it like I did at deposition. But, importantly, the officer conceded. Numerous things could be yelled during that time. Period. I mean, it's already been conceded. It's not even disputed. It is an undisputed fact that warnings could have been given and weren't given here. And the situation is, this is not the 3 a.m. where there's one guy standing there with a gun and somebody down on the ground. This is a crowded mall, very crowded mall, which means you're going to more likely not have… I'm not sure which way that cuts, frankly. Well, sure, you're going to have off-duty police officers. You're going to have good Samaritans. You're in a lawful carry state. I know, which shows that lawful carry is not always the panacea it's meant out to be. But that is why the Fourth Amendment… It's going to be a nightmare. Police officers have no clue whether the people who are carrying guns in a place like a mall are gooders, good Samaritans, good citizens, owning a gun, or whether they're up to no good. And you're going to get more of these cases, unfortunately. The officer doesn't get to flip the coin. And in this situation, off-duty officers would like to know that they're at least safe to operate and do not get shot in the head, that they're going to hear what their training says, which is, police, we're operating, so they can stop. They can just freeze for a second. But that didn't happen. There was a period of time where all they heard was the shots. They didn't see Bradford yet. And had they been doing according to their training and yelling out, police, get down, everybody stop, then… So everything in this case comes down to the warning? Everything comes down to the fact that the officer concedes that there was time to give the warning, that the expert explains that built into the training is the fact that a warning is provided in this type of situation, and along with the evidence, which is, you literally had a balanced scale, and he flipped the coin, and he killed somebody. And the problem is, you're saying, well, essentially what the court is saying, better he shoot this one and not this one, but there needs to be more. That's why we have the probable cause standard. That's why we have the feasible warning standard for the very difficult situations like this to be prevented. Because, again, if he's yelling and following his training as the expert who was ignored in this case said, then he would have been yelling, police, stop, and everything would have frozen. And Mr. Bradford would have had an opportunity to save his life, or an off-duty police officer would have had an opportunity to save his life. But he was given no option, no chance. He was simply shot dead because an officer flipped the coin here. This is different from all the other cases cited by the other side. In every case, there was either a warning, there was a gun pointed at somebody, there was a gun pointed at an officer. There had just been clearly probable cause that a felony had been committed by the individual. We don't have any of that here. We simply have an individual lawfully possessing a gun. I know, but they don't know he's lawfully possessing it. Exactly, which is why the law says that. And it's five seconds, and he's ten feet away. And he says there's time. That's much closer than you and I are right now. I understand. And unfortunately, just like sometimes officers have to expose themselves to some danger, the reality is the way that the law is built is to provide every opportunity to get it right. And here, the officer said, I had time. I could have given warnings. He literally said during his deposition that, yeah, he did just give, you know, say a lot during that three to five seconds. But again, it's not about the three to five seconds. It's about entering the space the way the expert said he was supposed to enter the space. There would have been a clear warning that could have been given multiple warnings, frankly, as you've had in other cases. So it all comes down to the warning then. It all comes down to looking at the correct evidence and not removing the evidence that is of record and having a layperson's opinion as far as how police operate. And then, yes, it comes down to the warning. So undisputed expert opinion evidence was not considered in this case, should have been. And so the inferences and those facts should have gone in our favor. But they were not. So that's not how we do the summary judgment here. And in addition, yes, those facts are then in dispute at best, even though our expert is unrebutted. All right, Mr. Jacob, we've taken you way beyond your time, but you have your full five minutes for rebuttal. Thank you, Your Honors. Mr. James. May it please the court. My name is Randy James and I represent Officer David Alexander. That took five seconds. Can I ask you a question at the outset? Just something maybe it's just a point of curiosity, but I just don't quite understand. Was your client at the time working on behalf of the Hoover Police Department, the mall or both? He was working only on behalf of the Hoover Police Department. He was assigned detail there to work security in a crowded mall. His testimony was there were thousands of people in the mall and they are looking over the mall, watching to make sure everybody's doing what they're supposed to be doing. When he hears shots, he and his partner both turn around. They hear a woman scream. What's not been mentioned is a young lady, if you will look in the brief of those photographs, is clutching her back. She's been shot right in front of the foot action. So in those five seconds, he has to turn around, assess the situation, sees Bradford, whether he's running or moving quickly. The pictures and videos speak for themselves. He has a gun in his right hand and he's nearing the people on the rail that my client believes had been shot and, in fact, had been shot. We believe the district court got it right here. There's no Fourth Amendment violation. Whether or not there are. Our cases say that when deadly force is at issue. You need to give a warning if it's feasible, right? Yes, your honor. What do we do at summary judgment with your client's testimony that he could have given a warning? Well, in the concept of that deposition that Mr. Jacobs is talking about, he's got his watch on and he's saying, stop. Put your gun down all within this three second period. But you have to take the totality of the circumstances with people running everywhere. And I'm not saying you lose. I'm asking you what we do with your client's testimony at summary judgment. If the standard is feasibility of a warning and your client says a deposition that he could have given a warning. What do we do with that at summary judgment? His testimony was it was not feasible. Could it actually be done in a vacuum? Tell me what he said, because now both of you are telling me. I haven't read his deposition. Sure. But both of you are telling me different things to take from the deposition. He said he said it was not feasible. Given the time constraints and the crowded mall and people running to give a warning in that three to second period. Now, when he didn't say he could have given a warning. Jacob is just flat out wrong about that. When asked at his deposition, Mr. Jacob said, is it possible to say stop, put the gun down within three seconds? Well, clearly, standing here, I can say stop, put the gun down in three seconds. But in the chaos of the mall with a young man running with a pistol towards someone who's been shot, it just simply wasn't feasible. And if you look at Snook versus Powell, which I know Judge Newsom was on that panel, it was 19 seconds or excuse me, 17.8 seconds or nine seconds, depending on how you looked at it for that officer to have announced said something. And he said nothing. And I'll direct the court to a case cited by the appellant. Here is Cantu versus the city of Dothan. And it's a case that found that that Fourth Amendment had been violated. But in that circumstance, there are two officers wrestling with a gentleman in an animal shelter and a female police officer. And they accuse him of trying to get one of the officers tasers. And she shoots the man on the ground. And this court held, I think Judge Carnes wrote the opinion, that given those circumstances in five seconds, it would have been feasible to give a warning. Now, this is an officer standing over watching her two fellow officers wrestle the man. But in that case, he said five seconds wasn't sufficient. And that's without the chaos of thousands of people running through a mall. So, yes, can you can you say stop, put the gun down in three seconds? Yes, sure. But it wasn't feasible in this circumstance. So we believe that the district court got it right. There's no Fourth Amendment violation. And even if there would have been a Fourth Amendment violation. What do we do with what do we do? Let us. So I'm assuming you've got your client's testimony correctly phrased from the deposition. Now you have the expert on the other side. And the expert opines not on whether or not the use of deadly force was reasonable. I think Judge Newsom is right that that's a question for the court. But the expert says that a warning was feasible. What do we do with that at summary judgment? Well, that's not clearly established law. No, that's not my question to you. Maybe I'm just before we figure out clearly established law, before we figure out whether there's a violation to begin with. We have to figure out what the state of the record is with regard to facts and summary judgment. Right. Yes, sir. And we have to view the evidence in the light most favorable to the plaintiff in this case. Right. Yes, sir. OK, so if your client testifies in his deposition the way you said he did, which is not feasible to give a warning. And their expert provides an opinion, qualified opinion under Rule 702, that it was feasible to give a warning. What do we do with that conflict in evidence at summary judgment? Well, I think you do what Judge Proctor did. And that's determined from all the facts whether or not there was a whether or not it was reasonable under the law. Is feasibility of a warning an issue of fact or not? I think in this case it's not. Why not in this case and why it's maybe in some other case? Because it's just like Snook. It wasn't necessarily feasible there or just like Cantuck. It wasn't feasible there at some point. My question is, is it a question of fact, an issue of fact, or is it part of the reasonableness inquiry and a question of law? I think it's a question of law and the reasonableness inquiry. But law can only be applied to facts. So what do you do when the facts about feasibility are potentially disputed? That's my Rule 56 question to you. Yes, sir. Well, I think based on Scott v. Harris, the facts are really not in dispute here. They are on feasibility. You may not like that dispute, but it seems it exists. The officer said not feasible to give a warning, right? Yes, sir. Their expert said feasible to give a warning, right? Well, he says training provides that a warning should be given. Didn't he say that a warning should have been given in this case? He did. Okay. Is that a conflict in testimony that is material for summary judgment purposes or not? I do not think it's material for the summary judgment purposes here based on— How do we deal with it then? What do we say in a written opinion? There is a conflict in the testimony about the feasibility of a warning, but that's immaterial because—finish the sentence. Because it's not reasonable under the law here based on Scott v. Harris. Okay. So I've done a little bit of research on this, and I actually don't think we have an opinion that says one way or the other whether feasibility is a question of law or a question of fact. My own impression is that feasibility is a question of law because it's not a question of historical fact, like how many people were there, which way was he running, who had a gun, who didn't, how long, sort of what happened. I guess I'm a little skeptical of Bibel and Ebel words being questions of fact. Those sound sort of like objective inquiries to me, sort of given all of the circumstances, what's the right answer here? But I think Judge Jordan is correct that I don't know that we have an opinion saying one way or the other what feasibility is. Well, and I don't know that you do either. But under these circumstances, I believe it should be determined under the law. All right. We've taken you over your time, but if you want 30 seconds to wrap up, you can do that.  Your Honor, we believe that the district court got it right, both that there was no violation of the Fourth Amendment, and even if there was, there wasn't clearly established law. We also believe the court got it right as to the state immunity issues and that this case should be affirmed. All right. Thank you. Thank you, Your Honors. Mr. Jordan. May it please the Court. I'm Bert Jordan for the city of Hoover. And to follow up on the previous part of the conversation, I would say that feasibility seems to be an evaluation in the character of law. And I know that my colleague has cited Scott v. Harris, and that's the starting point, I think. And to follow up on Judge Newsom's point about objectivity and facts, I think Judge Jordan, you're exactly right. And frankly, Officer Alexander's right. And Mr. Jacob is right that physically it's possible. But that's not what Garner says. That's not the standard. The standard is this other concept. And it's not the same as physically possible. We know that because the words are different. Now, you've also said, as a matter of law, and I can't give you a site right this minute, but it's not always necessary to give a warning. And I think, Judge Jordan, insofar as you're focusing on this horribly narrow time frame, there's no better case to conclude feasibility is not present than in this time frame. Even though physically the vocal cords can work in that time frame, under those circumstances, it's hard to imagine that you can say that this man has to be evaluated negatively because he can't respond in that narrow span of time. Not only that, the Attorney General's report in the record here says, this document 99, that he's trained to focus on heading to a threat where there seems to be a risk of an active shooter. Now, it doesn't bear out at the end of the day. We don't know that we have only two people shot, only two people, one an innocent bystander not to mention. And of course, the officer doesn't know that in the first instance. You can't rely too heavily on that report because if you rely on that report, that sort of looks like somebody giving an expert opinion on what the officer was trained to do and should have done and shouldn't have done. And their expert is testifying about a different view of things. There are, insofar as the AG's report. I don't understand how that report is even in the record. I mean, isn't that just hearsay? I'm sorry. Isn't the AG report just hearsay? I think it's authenticated and not objected to. Well, I mean, it's authenticated in the sense that it is the Attorney General's report. But, I mean, it's not the Attorney General's report. It's just reporting information that it did not see. We did put it into evidence. And to the extent it's not, I think, to some degree, it's certainly not controlling. I think the facts, many of the facts come from that. And they're undisputed. But it is worth noting that there is a contradiction. At least if the alert training becomes material, there's a contradiction as to that. Now, I'm not sure either when you go into this question of evaluating the concept of feasibility, where that leads you with respect to the other prong of qualified immunity, which is how we got here. My understanding in the first place, the cities here is sort of a piggyback. The focus of the case in the first instance was on Alexander. Judge Proctor rules that as a matter of law, that the Fourth Amendment is not violated. And then he also adds the provision that he doesn't violate any clearly established right. But if you need to go to the other prong of qualified immunity to conclude that it's not clearly established in terms of whether a warning should have been given, there's been no clear direction in the case law that a warning should be given. Let me ask you a question I have about this. You are representing the city. How does a finding or a conclusion that the officer has qualified immunity matter with respect to your liability? Two possible ways. One is the underlying question of constitutional violation, which is the focus of Judge Proctor's ruling in favor of the city. It also can potentially benefit the city if the ruling is based on the other prong of qualified immunity. I guess my point is, don't we have to rule in your favor? We can't just rule on qualified immunity. Wouldn't we have to rule that there's no constitutional violation? Actually, I'm not so sure, Judge Brasher, about that. I think there are four circuits that, as we outlined in our brief, that said if you conclude that the underlying right is not clearly established, that the principle that's articulated in the complaint here, that the city showed deliberate indifference to the Fourth Amendment rights of Mr. Bradford. But those things don't jive. I mean, for better or worse, right or wrong, municipalities don't get any sort of immunities that individuals get. You get the Monell liability standard where you've got to show policy, custom practice, and sometimes deliberate indifference. But you don't get any of those individual immunities. So to Judge Brasher's point, if the ruling here were, and again, this is just a hypothetical, there was a Fourth Amendment violation, but the law was not clearly established, theoretically, you're not off the hook, right? I think that's one way to look at Monell and the principles of Monell and deliberate indifference. I'm saying our brief has sent out four cases, the Fifth Circuit, the Sixth, the Eighth, and the First, that say something different. What do those cases say? They say that, if you will, that the absence of a clearly established right means that a municipality under Monell cannot be said to be deliberately indifferent. There needs to be a clear articulation. And you actually have some cases in this circuit that hint at that. And it is correct, too, that, say, on jurisdictional appeals, there's been some question of whether they are logically linked. They have clearly established the immunity question and the liability under Monell. I think it's a Broward County case that takes the view that you're articulating, Judge Jordan. But assume those cases are right. Those cases can only apply in a situation where the state of mind for the municipality is deliberate indifference, right? There are municipal liability scenarios where you don't have to be acting in a deliberately indifferent way. I do think that the presence of municipal liability can pose a slightly different framework of analysis for determining whether there is a deliberateness up to the indifference. But I think Judge Jordan is saying deliberate indifference is one way to put a municipality on the hook. But it's not the only way to put a municipality on the hook. You might also put the municipality on the hook by virtue, by reference to a customer practice. Yes, and I don't think that's the record here. I don't think that's the record. No, no, it's not. That's why I said it's a hypothetical. I'm not saying it's this case. But if you had a municipality with an ordinance, for example, that allowed city police officers to go into a home without a warrant, without probable cause, without exigent circumstances, maybe you would give qualified immunity to an officer who followed that ordinance and went into a home, but you wouldn't require deliberate indifference on the part of the municipality to hook it under Monell. I'm just saying if those cases are right, they probably apply in a situation where you have to show deliberate indifference on the part of the municipality to get liability against the city, the county, et cetera, but not otherwise. But that's just a thought. Well, if I say I'm over my time. That's okay. You can wrap up. You have 30 seconds. Let me say this in closing. If perhaps there is some need to balance the interests at stake before finding a Section 1983 damage remedy to be available, in a sense, what's at stake here is both sides are said to be due some sort of notice or warning, which is to say opportunity to stop. If feasible, a citizen like Bradford is due a warning, but not always, as you've said as a court. Persons like Alexander are also due a warning notice that his use of deadly force is not permitted in order for the remedy to be operative. It seems that Alexander has not received that warning. He is due before finding him liable under 1983. And similarly, likewise, the city should also be due more warning in the pleadings here and on the facts before concluding it can be deliberately indifferent to the rights of persons not to be subjected to deadly force. Thank you. All right, Mr. Jordan. Thank you very much.  May it please the court. Travis Keith on behalf of Hoover Mall Limited, LLC, and Brookfield Retail Properties. We refer to ourselves as the mall defendants. I'll just begin by saying with respect to the Monell claim against the mall defendants in this particular case, we really don't have. I understand that, by the way. Can you tell me what in the world, how Monell is relevant to a private entity? I think the theory or the argument would be that under some, you know, custom-based practice similar to that, if there is an underlying constitutional violation and we can be tied to Officer Alexander as a state actor, somehow acting on our behalf, that he was acting under pillar of state law, that Monell would then be extended somehow to my clients. Can I ask you a different question just about the state law claims against your clients? Certainly. Can you help me? I'm having a hard time figuring out, frankly, like sort of which vector of Alabama Supreme Court precedent I ought to be looking at. Because on the one hand, I feel like there's this general rule that, you know, sort of you've got no duty to protect third parties. But then there's this, then they cite the business invitee cases. And then there's this Wild West saloon case or whatever that seems like a third party crime case. It seems like pretty analogous, frankly. And when I read that one, I'm like, whoa, there's nothing in here about sort of dependence of the third party. It's really just like straight foreseeability. Yeah, I do think that it is a difficult situation. There are cases, I'll first note, you know, that are akin to the invitee concept, that bear upon the invitee concept. The concept brought us the Chevron USA. There's one Johnston v. Minimart is another that really stand for the proposition that the simple status of an invitee in and of itself does not create a special relationship that would give rise to third party liability. I'll acknowledge the unique nature in the sense of this case and that it wasn't Mr. Brown, the original shooter that ultimately injured and fatally wounded Mr. Bradford. Of course, we have what we have is a secondary response by law enforcement officers. But I don't think any of the cases cited, Wild West included, go so far as to say that there's a duty on the behalf or a duty on the part of a premises owner to somehow guard against or protect all invitees from all criminal situations that arise. But just in fairness, wasn't Wild West, wasn't the enforcer a bouncer? And isn't that kind of like the mall cop? But in Wild West, I think the question, the entities, the premises owner, the employee was the bouncer that put him out of the club. It was not an employee of the club that caused the harm. It was an employee of a separate security company in the parking lot. So it was somewhat factual differentiation there in that it wasn't the employee of the club that did that in that particular circumstance. And I believe in Wild West, they said that there was no liability to be extended to the premises owner in that circumstance. Yes, so with respect to, you know, my issue on the state law claims, I'll just turn to that if the court isn't fine. I'll say as far as the state law claims go, my issue is something somewhat different, of course, than the constitutional claims. It deals with the sufficiency of pleadings under Iqbal and Twombly and whether or not there were sufficient facts pled in Ms. Pipkin's complaint. The facts in the complaint only go so far. To go to Judge Newsom's point is to say essentially that Mr. Bradford was an invitee and essentially to assert that there was a general duty to protect him, not only from criminal acts of a third party, but also from the law enforcement response simply by virtue of his status as an invitee. Well, as we noted in case law, like I said, Chevron, Brodsky Chevron, that is not sufficient. So simply those allegations alone are not enough. The pleadings then, I think, turn and this is something that is addressed in briefs, which of course we will stand on. The pleadings then seem to turn and Mr. Jacobs travels down a path of essentially an undertaking of a voluntary duty by virtue simply of the fact that the mall hired security personnel and or contracted with the city of Hoover. Can I ask you a question that has been troubling me? I just can't get my head around it. What is left of the state law claims against your client given the district court's certification order? Didn't the district court decline to exercise jurisdiction over the claims? I think these well and I will say I think the the order you are referring to they declined to exercise jurisdiction over the city over the remaining state law claims in the city of Hoover. The state law claims against my clients were dismissed at the threshold motion to dismiss stage. For all the I'm reading from that's why I'm confused. The district is the district court's order section four on page eight. This is the February 22nd 2023 order for all the foregoing reasons. And after circulating this opinion to all counsel for review and opportunity to respond before entering it pursuant to rule 56 defendant city of Hoover Brookfield Properties retail and Hoover Mall Limited are entitled to summary judgment on the remaining Monell Monell liability municipal claims against them. The court declines to exercise jurisdiction over plaintiff state law wrongful death negligence wantonness claims against the city. What's left? Yeah. And that's to say our claims by that point were already dismissed. State law claims against there were no state law claims against you that were not previously resolved. That's correct. That were not previously. I thought there was I thought there was a state wrongful death claim still pending against you by the time this order was entered. That's not right. No, that is not correct. The only remaining wrongful death state law claim was pending against the city of Hoover. Okay. All right. Thank you very much. Thank you. Thank you. Thank you. Thank you.     Okay, Mr Jacob, your honor. If I could clear up this issue with the deposition testimony on page six of my reply brief. Actually quote the section of the deposition testimony from Alexander question. The circumstances are you have three to five seconds. Can you yell several commands in three to five seconds? Yes or no answer. Yes. Okay. Question.  And I just showed you that you can correct answer. Yes. Is that the definition of feasibility that it's literally possible to mouth the words? Understood. And I wanted to I did want to go on to say that, yes, in a deposition, he further explained in a subjective opinion that it was not feasible because of everything else going on. However, again, the subjective opinion to hold test is whether it's objectively reasonable. And that goes to feasibility does rely on historical facts, such as how is it is a objectively reasonable officer trained? Why are they trained that way? How would they look at this? So that starts looking more to what Judge Newsom suggested earlier that it might be a question that feasibility might be a question of law. It absolutely is. Mostly, I would say, because you need to you do need to look to this. I get it. I get it. You need an underlying basis of historical. Correct. Just can't say feasibility in the abstract without any tie to a record. I get that. And the end of the day, you think it's a legal question. Once you view the evidence through the rule 56 prism. Actually, no. Just as it just as we send to a jury whether force is objectively reasonable at the end of the day. There are certain questions that present as legal but are really factual. It's a factual question. Does that mean that the upshot of your position is that in every excessive force case, there should be a battle of the experts? It's not historically what we see.  But in every excessive force case where there's going to be a question of qualified immunity, unfortunately, that's where we are. We need to decide what is the objectively reasonable officer standard. And the only way to do that is through expert opinion or waive it and go with it as most cases have done. We chose to establish what the objectively reasonable standard is through an expert opinion. The defendants chose to simply either rely on our opinion, not rebut it. Frankly, if they agree with our opinion, then plaintiffs prevail. I guess my own sense is that if we're in agreement that reasonableness is a question of law, then if you've got an expert, not fact witnesses testifying to historical facts, but an expert testifying as to the ultimate conclusion of reasonableness, then, I mean, I think maybe I've forgotten, but I think with the exception of questions of foreign law, we don't allow legal experts. I think, I don't know if I misspoke or miscommunicated, but I'm not saying reasonableness is a question of law. I'm saying you have an option. No, I'm telling you that reasonableness is a question of law. Okay, I thought you said that. I'm telling you, like, we have to accept that proposition. Understood, but in the sense of applying it to a set of facts, but those facts as far as what makes up objective reasonableness is what I'm saying, those are factual. No, but the reason that reasonableness claims in a Fourth Amendment 1983 case and go to a jury sometimes is because the facts, the historical facts are disputed. As here. Hold on, hold on. And so, for example, if the police officer's version of events is credited, you could easily say that the use of force was reasonable. But if you credit the plaintiff, the victim's version of facts, then you could say, no, that's unreasonable, right? That person was not resisting. That person was not doing anything wrong, and the police officer just struck him on the back of the head with a baton for no reason. So you need a dispute of fact to then apply the reasonableness standard through jury instructions in a proper case. But reasonableness, generally speaking, if the facts are what they are, yet court decides reasonableness. That is correct. And unfortunately, we have to wrestle with this qualified immunity issue now. And so looking at the qualified immunity analysis, we have a disputed fact. We should not be here because there's a disputed fact as to what facts can the court look to to determine what is objectively reasonable. In that case, does the court look to the lay opinion of the judge? No. Does the court look to the subjective opinion of the officer? No. Can the court look to an unrebutted expert opinion that talks about the objectiveness of everything, how they're actually trained across the board, how officers across the board would approach a situation? Those are what frame the context by which the court then decides, is it reasonable or not? And here the court completely disregarded the facts of record in a case where the facts should have been found to be at best disputed or undisputed when it comes to that issue in favor of plaintiff. All right. Thank you. Thank you. Thank you all very much. Thank you.